**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID. No. 2403003831 |
| | ) | |
| SHAWN KEYS, | ) | |
| Defendant. | ) | |

Submitted: July 1, 2024
Decided: July 12, 2024

**ORDER**

*Upon Defendant Shawn Keys' Motion to Dismiss Counts III and IV of the Indictment*, **DENIED**.

Upon consideration of Defendant Shawn Keys' Motion to Dismiss Count III and IV of the Indictment (Docket Item "D.I." 2), the State's response thereto (D.I. 6), the parties' arguments at the motion hearing, and the record in this case, it appears to the Court that:

**FACTUAL AND PROCEDURAL BACKGROUND**

(1)     In 2021, Defendant Shawn Keys ("Keys") was convicted in the State of Virginia of Failure to Comply with Law Enforcement Command (Motor Vehicle Pursuit), a Class 6 felony.[1]

(2)     Three years later, on March 3, 2024, officers from the Wilmington Police Department was dispatched to investigate a shooting in which a victim

---

[1] D.I. 2, Defendant's Motion to Dismiss ("Motion"), Ex. A.

1

suffered a single gunshot wound to the abdomen/groin.[2] Video footage from the area showed images of two suspects that were consistent with the shooter's description/appearance.[3]

(3)     Keys was subsequently identified as a suspect in the shooting, and on March 8, 2024, after the victim positively identified Keys as the person who shot him, the police arrested Keys.[4] In executing a search warrant at Keys' residence as part of the continued investigation into the shooting, the police recovered two firearms and multiple rounds of ammunition from Keys' basement.[5] Consequently, Keys was charged with additional offenses, including two counts of Possession of a Firearm by a Person Prohibited pursuant to 11 *Del. C.* § 1448.[6]

(4)     On April 26, 2024, Keys filed this instant Motion to Dismiss Counts III and IV of the indictment, which charged him with Possession of a Firearm by a Person Prohibited.[7] On June 13, 2024, the State filed its response to Defendant's Motion,[8] and on July 1, 2024, the Court convened a hearing to receive argument from the State and defense counsel.

---

[2]  D.I. 6, State's Response to Defendant's Motion to Dismiss ("State's Response") at 1.
[3]  *Id*. at 2.
[4]  *Id.*
[5]  D.I. 2, Motion at 2.
[6]  *Id.*  There are two Superior Court case numbers associated with the shooting and the recovery of the handguns and ammunition from Keys' basement – 2403002731 and 2403003831.
[7]  *Id.* at 1.
[8]  D.I. 6, State's Response.

(5)    Keys moves to dismiss two Possession of a Deadly Weapon by a Person Prohibited charges pursuant to 11 *Del. C.* § 1448, asserting this statute places an unconstitutional infringement on his Second Amendment right to possess a firearm as a non-violent offender.[9] More directly, he argues the imposition of lifetime disarmament due to his prior felony conviction in Virginia is inconsistent with the United States' "historic tradition of firearm regulation."[10] The State opposes Defendant's Motion.

**ANALYSIS**

-    ***BRUEN* DOES NOT OVERTURN THE "LONGSTANDING PROHIBITION ON FELONY FIREARM POSSESSION" AS DECIDED IN *HELLER* AND *MCDONALD*.**

(6)    Keys contends that the Supreme Court's holding in *New York State Rifle & Pistol Association v. Bruen*[11] negates the "longstanding prohibition on felony firearm possession" accepted in both *District of Columbia v. Heller*[12] and *McDonald v. City of Chicago*.[13] Yet, a correct reading of the *Bruen* decision shows that it does not overturn *Heller* and *McDonald*, but rather builds onto the U.S. Supreme Court's acknowledgment of the "presumptive lawfulness" of the disarmament of convicted felons.

---

[9]  D.I. 2, Motion at 1.
[10]  *Id.*
[11]  *Bruen*, 597 U.S. 1 (2022).
[12]  *Heller,* 554 U.S. 570 (2008).
[13]  *McDonald*, 561 U.S. 742 (2010).

(7)	In *Heller*, the Supreme Court held in 2008 that the Second Amendment guarantees citizens the personal right to possess firearms, but also noted that right is "not unlimited."[14] There, the Court employed a "means-end" approach, considering both the historical tradition of the firearm regulation in question and the modern purpose it serves when assessing Constitutional challenges under the Second Amendment.[15] Most relevant to the instant motion, the *Heller* Court noted that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons,"[16] and felon dispossession statutes are "presumptively lawful."[17]  These sentiments were expressly reiterated by the Supreme Court in 2010 in *McDonald v. City of Chicago*.[18]

(8)	Fourteen years after *Heller,* the Supreme Court in *New York State Rifle & Pistol Association v. Bruen* clarified the analysis to utilize when considering whether firearm regulations are consistent with the Second Amendment.[19] The new test stated, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.[20] The government

---

[14]	*Heller,* 554 U.S. at 595.
[15]	*Id*. at 595.
[16]	*Id*. at 626.
[17]	*Id*. at 627, n.26; *see* State's Response at 3 ("11 *Del. C.* § 1448 is presumptively lawful.").
[18]	*McDonald*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding, regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill… We repeat those assurances here.").
[19]	*Bruen*, 597 U.S. at 17.
[20]	*Id.* at 24.

4

must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."[21] In simple terms, under this updated approach, lower courts are directed to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."[22]

(9)     Keys argues this new test disposed of the presumption that felon dispossession statues were lawful and *Bruen* should be read to abrogate the findings of *Heller* and *McDonald*.[23] But the Supreme Court did not purport to overturn *Heller* or *McDonald* with their decision in *Bruen*.[24] On the contrary, six of the nine Justices explicitly noted[25] the majority opinion did not cast any doubt on *Heller*'s conclusion that felon dispossession statutes are "presumptively lawful."[26]

- **BY ITS NARROW HOLDING, *RANGE LACKS PRECEDENTIAL VALUE* IS AS APPLIED TO KEYS.**

---

[21]  *Id.*

[22]  *Id.* at 19.

[23]  Motion at 3.

[24]  *See Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) ("Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons."); *See also United States v. Sternquist*, 692 F. Supp. 3d 19, 24 (E.D.N.Y. 2023) ("Had the *Bruen* Court intended to abrogate or overturn *Heller* or *McDonald*, it would have done so explicitly.").

[25] *See Bruen,* 597 U.S. at 2157 (Alito, J., concurring) (noting *Bruen* did not "disturb[ ] anything that [the Court] said in *Heller* or *McDonald*… about restrictions that may be imposed on the possession or carrying of guns"); *See also Id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (*Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons" (citation omitted)); *Id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor, and Kagan, JJ.) ("[l]ike Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on th[e] aspect of *Heller*'s holding" maintaining the prohibition on felony firearm possession is presumptively lawful).

[26]  *Heller,* 554 U.S. at 627 n.26.

(10)  Following *Bruen*, the Third Circuit issued its decision in *Range v. Attorney General of the United States of America*,[27] upon which Keys relies. In 1995, Bryan Range ("Range") pled guilty of one count of making a false statement to obtain food stamps in violation of 62 Pa. Cons. Stat. § 481(a).[28] This conviction was classified as a misdemeanor, punishable by up to five years imprisonment.[29] Range received a probationary sentence of three years and, as a result, was prohibited from possessing a firearm[30] pursuant to 18 U.S.C. § 922(g)(1).[31] Twenty-eight years later, Range brought a civil action seeking a declaratory judgment declaring that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him.[32] The District Court denied Range's declaratory judgment action, finding, *inter alia*, that his crime was "serious enough to deprive him of his Second Amendment rights."[33]

(11)  On appeal, after applying the recently established *Bruen* test, the Third Circuit found that the Government failed to meet its burden of demonstrating that "our Republic has a longstanding history and tradition of depriving *people like*

---

[27]  *Range*, 69 F.4th 96 (3d Cir. 2023).
[28]  *Id.* at 98.
[29]  *Id.*
[30]  *Id.*
[31]  *See* 18 U.S.C. § 922(g)(1) (provides, in pertinent part, "It is unlawful for any person…who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affect commerce, any firearm or ammunition"); *See also* 18 U.S.C. § 921(a)(20)(B) (offers a safe harbor provision excluding state misdemeanors from the prohibition if "punishable by a term of imprisonment of two years or less." Range's conviction and sentence precluded the application of the safe harbor provision.)
[32]  *Range*, 69 F.4th at 99.
[33]  *Id.*

*Range* of their firearms."[34] While ultimately finding for Range, the majority opinion explicitly limited its holding as a "narrow one," finding only that § 922(g)(1) was unconstitutional *as applied to Range* given his violation of 62 Pa. Stat. Ann. § 481(a)."[35] But, as clarified in Judge Thomas Ambro's concurrence, the Third Circuit's majority opinion did not limit Congress's authority to disarm "those who pose a threat to the orderly functioning of society."[36] It is fair to conclude the Third Circuit specifically restricted the precedential value of *Range* to its specific and distinct facts.

- **KEYS IS NOT "LIKE RANGE" BECAUSE KEYS WAS RECENTLY CONVICTED OF A DANGEROUS FELONY, SERVED A PRISON SENTENCE, AND WAS FOUND IN POSSESSION OF FIREARMS AFTER SHOOTING SOMEONE WITHOUT PROVOCATION.**

(12)   Given the Third Circuit's narrow holding, the multitude of factual differences between the two cases shows *Range's* lack of precedential value as applied to Keys.   The case at hand is distinguishable in several respects.

(13)   The first difference between *Range* and *Keys* is the nature of the predicate offense which made each a prohibited person. Whereas Range was charged with a non-violent, non-dangerous misdemeanor for understating his income on a food stamp application, Keys has a felony conviction. His charge of Failure to

---

[34]   *Id.*
[35]   *Id.*
[36]   *Id.* at 106.

Comply with Law Enforcement Command is a dangerous crime that demonstrates a disregard of authority and constitutes a risk to public safety. Despite the lack of a detailed record of the facts supporting Keys' prior felony conviction, failing to obey law enforcement undoubtedly "pose[s] a threat to the orderly function of society," a point the Third Circuit expressly relied upon in maintaining the presumptive lawfulness of disarming convicted felons.[37]

(14)   Second, while Range was not incarcerated for his misdemeanor conviction, Keys served a six-month prison sentence in Virginia for his felony conviction.[38] Keys' sentence further illustrates the danger he posed to the community.[39] Third, Keys' prior felony offense occurred a mere three years ago,[40] whereas Range sought relief from a twenty-eight-year-old misdemeanor conviction.[41]

(15)   Finally, both defendants in *Range* and *Bruen* sought declaratory judgments to enjoin enforcement of the firearm regulations against them prior to acquiring firearms. This is unlike Keys, who was arrested and charged with the unprovoked shooting of a purported stranger, and, through the subsequent police

---

[37]   *Range*, 69 F.4th at 110.
[38]   D.I. 2, Motion, Ex. A.
[39]   *See United States v. Roberts*, 2024 WL 50889 at *7 (D. Alaska Jan. 4, 2024) (distinguishing Range's three-year probation sentence from the defendant's two-and-a-half-year imprisonment).
[40]   D.I. 2, Motion, Ex. A.
[41]   *Range*, 69 F.4th at 98; *See United States v. Canales*, 2021 WL 8092078 at *5 (E.D. Pa. 2023) (distinguishing Range's 28-year-old conviction from the defendant's four-year-old felony charges).

investigation, was in possession of two firearms and ammunition. Notwithstanding his prior felony conviction, the assault committed by Keys with a firearm on March 3, 2024 demonstrates he remains a dangerous individual to whom prohibition on firearms ownership should apply.

(16)  These material differences undermine any argument that the narrow holding of *Range* applies here.  Moreover, many courts, including Federal Circuit Courts, Federal District Courts, and State courts who have considered this issue have declined to follow *Range*, one federal court identifying it to be an "outlier."[42] While those decisions are not binding on this Court, these well-reasoned opinions support the conclusion that *Range* has no precedential value here, and Delaware's statute which prohibits felons from possessing firearms and other deadly weapons is lawful.

---

[42]  *See United States v. Jackson*, 68 F.4th 495, 502 (8th Cir. 2023) (declining to follow *Range* and upholding the prohibition on the possession of firearms by felons); *United States v. Harrison*, 683 F. Supp. 3d 184, 195 (N.D.N.Y. 2023) ("[T]he list of post-*Bruen* precedent that is actually favorable to defendant's Second Amendment text-and-history argument basically begins and ends with the *en banc* opinion in *Range*."); *see also United States v. Sternquist*, 692 F. Supp. 3d 19, 20 (E.D.N.Y. 2023) (describing *Range* as an "outlier"); *United States v. Roberts*, 2024 WL 50889, at *7 (D. Alaska 2024); *United States v. Gaskin*, 2024 WL 381009, at *4 (D. Conn. 2024).

**CONCLUSION**

(17) The Supreme Court's decision in *Bruen* did not invalidate the "presumptive lawfulness"[43] of felony firearm dispossession statues, as decided in *Heller* and *McDonald,* but rather clarified the appropriate test to be applied in Second Amendment challenges as they relate to persons prohibited from possessing deadly weapons. Thus, the Third Circuit's opinion in *Range*, the case upon which Defendant principally relies, should be construed narrowly to read that the felon dispossession statue was unconstitutional as applied *in that case*.[44] But here, Keys was convicted of a recent and dangerous felony offense for which he served jail time, and subsequently came to Delaware, shot a homeless person, and two firearms and ammunition were subsequently found in his basement. Accordingly, Keys' Motion to Dismiss Counts III and IV of the Indictment is **DENIED.**

　　**IT IS SO ORDERED.**

/s/ *Martin B. O'Connor*
Commissioner

Cc:　Prothonotary
　　　Luke Raber, Deputy Attorney General
　　　Georgia Pham, Deputy Attorney General
　　　Lauren Brown, Esquire, Asst. Public Defender
　　　Marc Wienkowitz, Esquire, Asst. Public Defender

---

[43] *Heller,* 554 U.S. at 627, n.26.
[44] *Range*, 69 F.4th at 99.

10